Phil Telfeyan (*pro hac vice pending*)
Catherine Sevcenko (*pro hac vice pending*)
Rebecca Ramaswamy (*pro hac vice pending*)
Attorneys, Equal Justice Under Law
400 7th Street NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
catherine@equaljusticeunderlaw.org
rramaswamy@equaljusticeunderlaw.org

Robert Farris-Olsen (MT Bar No. 11937)
Scott Peterson (MT Bar No. 11996)
Attorneys, Morrison, Sherwood, Wilson & Deola, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
(406) 442-3261
rfolsen@mswdlaw.com
speterson@mswdlaw.com

*Attorneys for Plaintiff Michael DiFrancesco*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| MICHAEL DiFRANCESCO, on behalf of himself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CV- 17-66-BU-SEH ) |
| STEVE BULLOCK, in his official capacity as Governor of Montana; TIM FOX, in his official capacity as Attorney General of Montana; SARAH GARCIA, in her official capacity as Administrator of the Motor Vehicle | ) CLASS ACTION ) JURY DEMANDED ) ) ) ) ) |

1

Division; and                              )
MICHELE SNOWBERGER, in her                 )
official capacity as Bureau Chief of the   )
Driver Services Bureau,                    )
                                           )
    Defendants.                            )
_____)

## CLASS ACTION COMPLAINT

### Introduction

1.    This case is about the Motor Vehicle Division of the Montana Department of Justice ("the MVD") running a wealth-based driver's license suspension scheme that traps some of the state's poorest residents in a cycle of poverty. The MVD automatically and indefinitely suspends the driver's licenses of people who owe court-ordered fines, costs, and restitution even if they simply cannot afford pay. Without driver's licenses, people already facing the harsh realities of owing court debt while living in poverty face additional hurdles of being unable to drive to and from work, get their children to daycare, keep medical appointments, and care for their family members.

2.    Although Montana's automatic suspension of driver's licenses is designed to coerce payment, for people who are *unable* to pay, the state's practice will never accomplish its intended goal; no incentive or punishment will increase the likelihood of a person paying a debt if he or she does not have the money. Penalizing people for being unable to pay court debts violates the Equal Protection

2

Clause of the Fourteenth Amendment, the Due Process guarantee of fundamental fairness, Plaintiff's right to intrastate travel, and longstanding Supreme Court precedent. Montana has trapped Plaintiff Michael DiFrancesco in an inescapable cycle of poverty by suspending his license, thereby severely limiting his job opportunities.

3.     The MVD indefinitely suspends the driver's licenses of people who fail to pay court-ordered fines, costs, and restitution, even where nonpayment is solely due to indigence and thus not willful. Mont. Code Ann. § 61-5-214(1)(b). A person whose license has been suspended for non-payment of fines or fees must pay $100 to the MVD before his or her license can be reinstated unless a court found the person indigent for the purposes of assigning a public defender. Mont. Code Ann. § 61-5-218.

4.     Anyone convicted of driving during a suspension period faces a mandatory jail sentence of between two days and six months plus a fine of up to $500. Mont. Code Ann. § 61-5-212(1)(b)(i). A conviction also carries a mandatory one-year extension of the suspension. Mont. Code Ann. § 61-5-212(2)(a).

5.     These suspensions deprive some of Montana's poorest residents of their only reliable means of transportation to and from work, further diminishing their ability to meet their court-ordered financial obligations.

6.    By and through his attorneys, on behalf of himself and others similarly situated, Plaintiff Michael DiFrancesco seeks declaratory and injunctive relief against Defendants in their official capacities to end this unconstitutional wealth-based suspension scheme because it violates the Due Process and Equal Protection Clauses of the United States Constitution.

## Nature of the Action

7.    The Montana MVD automatically suspends the driver's licenses of people who fail to pay court-ordered fines, costs, and restitution, even if they are unable to pay the debts. Plaintiff seeks declaratory and injunctive relief prohibiting this wealth-based suspension scheme.

8.    The MVD is violating Mr. DiFrancesco's substantive due process rights, and those of people similarly situated, because it is fundamentally unfair to suspend people's driver's licenses solely because they are too poor to pay their court debts.

9.    The MVD is violating Mr. DiFrancesco's substantive due process rights, and those of people similarly situated, because Montana citizens, regardless of wealth, have a fundamental right to intrastate travel in addition to the constitutional guarantee of interstate travel. Because there is no meaningful alternative to driving in Montana, the lack of a valid license necessarily impedes those rights without being narrowly tailored to a compelling government interest.

4

10.   The MVD is violating Mr. DiFrancesco's equal protection rights, and those of people similarly situated, because the state's suspension scheme lacks any rational basis.  Suspending the driver's licenses of people too poor to pay court debt inhibits a person's ability to pay court debts, thus directly undermining the supposed governmental interest in obtaining payment.

11.   The MVD is violating Mr. DiFrancesco's equal protection rights, and those of people similarly situated, because automatic driver's license suspensions constitute an extraordinary collection effort.

12.   The MVD is violating Mr. DiFrancesco's procedural due process rights, and those of people similarly situated, because individuals have property interests in their driver's licenses that cannot be denied without notice and a hearing.

## Jurisdiction and Venue

13.   This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq.*, and the Fourteenth Amendment to the United States Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

14.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Parties

15.   Plaintiff Michael DiFrancesco is a 22-year-old resident of Bozeman, Montana, who has recently experienced homelessness.  Exhibit 1, DiFrancesco

5

Decl.  Mr. DiFrancesco's troubles began when he was fined $185 for a civil infraction he committed when he was only 14 years old.  Since then, his court debt has ballooned to nearly $4,000 due solely to his inability to drive legally.  Mr. DiFrancesco cannot afford to pay this debt.  *Id.*

16.     Defendant Steve Bullock is the Governor of Montana.  As Governor, Mr. Bullock is the head of the executive branch of the Montana state government and is responsible for enforcing state law.  Mr. Bullock is sued in his official capacity as Governor.

17.     Defendant Tim Fox is the Attorney General of Montana.  As Attorney General, Mr. Fox is the head of the Montana Department of Justice, the state's top law enforcement and legal agency.  Additionally, because the Montana MVD is a division of the Department of Justice, Mr. Fox oversees and is ultimately responsible for all actions of the MVD.  Montana Department of Justice, https://dojmt.gov (last visited Aug. 31, 2017).  Mr. Fox is sued in his official capacity as Attorney General.

18.     Defendant Sarah Garcia is the Administrator of the Motor Vehicle Division of Montana.  The MVD is a division of the Department of Justice and is responsible for "ensuring authentication for credentials, licenses, vehicles titled, and accountability of official records."  *Motor Vehicle Division*, Montana

Department of Justice, https://dojmt.gov/driving (last visited Aug. 31, 2017). Ms. Garcia is sued in her official capacity as MVD Administrator.

19.    Defendant Michele Snowberger is the Bureau Chief of the Driver Services Bureau of the Motor Vehicle Division. The Driver Services Bureau "administers all driver license records and actions" including suspensions. *Motor Vehicle Division*, Montana Department of Justice, https://dojmt.gov/driving (last visited Aug. 31, 2017). Ms. Snowberger is sued in her official capacity as Bureau Chief.

20.    At all times relevant to the events, acts, and/or omissions alleged in this Complaint, Defendants have acted under color of state law, pursuant to their authority and responsibilities as officials of the State of Montana.

## **Factual Allegations**

### A.    **Introduction**

21.    The MVD suspends the driver's licenses of people who fail to appear in court or fail to comply with a sentence — including payment of court-ordered fines, fees, and restitution — upon receipt of a report from a court. Mont. Code Ann. § 61-5-214(1)(b).

22.    The MVD imposes suspensions under MCA 61-5-214 for failure to pay regardless of the reason for nonpayment and without consideration of whether the person has the financial means to pay. *Id.*; *see also* Exhibit 2, Rutzke Aff.

7

23.     Suspensions for failure to appear or failure to pay fines are indefinite and continue until the court notifies the Department that the person has complied with the sentence, "including payment of any assessed fines, costs, or restitution." Mont. Code Ann. § 61-5-214(2)(a); *see also Driver License Suspension*, Motor Vehicle Division, Montana Department of Justice, https://dojmt.gov/driving/driver-license-sanctions (last visited Aug. 31, 2017).

24.     A valid driver's license is essential for people to secure and maintain employment, and the loss of a license often results in further financial hardship for individuals and their families. *See* Exhibit 2, Rutzke Aff.

25.     Research has consistently found that a driver's license is often necessary to maintain a job, pursue educational opportunities, and care for dependent relatives. *See* "Letter to Colleague" from Vanita Gupta & Lisa Foster, U.S. Department of Justice (Mar. 14, 2016).[1]

26.     An estimated 10,000 Montana residents have their licenses suspended each year because of failure to pay court debts.[2]

27.     Suspended licenses can trap people who are poor in an impossible situation: they cannot afford to reinstate their licenses without steady employment, but they are unable to work without licenses. *See* Exhibit 2, Rutzke Aff.

---

[1] https://www.justice.gov/crt/file/832461/download
[2] Based on data from the Driver Services Bureau indicating that, in 2016, "19,280 drivers were suspended by the courts for failure to appear or failure to comply." Exhibit 3, E-mail from Patrick McJannet, Driver Services Deputy Bureau Chief.

28.     Paying off court debt is particularly difficult for the 14% of Montana residents who live below the federal poverty line.[3]

29.     Suspending licenses as a means of debt collection also puts public safety at risk, because law enforcement resources are devoted to stopping, investigating, and prosecuting suspended drivers who do not present a danger behind the wheel instead of pursuing individuals who do.

## B.     Plaintiff's Debt

30.     Named Plaintiff Michael DiFrancesco is a resident of Bozeman, Montana. Exhibit 1, DiFrancesco Decl.

31.     In 2008, when Mr. DiFrancesco was 14 years old, he was convicted of violating Montana's "minor in possession" (MIP) law, a civil infraction. *Id.; see also* Exhibit 4, Bozeman Mun. Ct. Summary; Mont. Code Ann. § 45-5-624.

32.     As penalty for his civil infraction, he was fined $185 and ordered to pay for and complete a community-based substance abuse information course. Exhibit 4, Bozeman Mun. Ct. Summary; *see also* Exhibit 1, DiFrancesco Decl.

33.     At the time, Mr. DiFrancesco could not afford to pay the fine or the fee for the course. *Id.*

34.     Because he could not afford to comply with the sanction, Mr. DiFrancesco received a notice from the MVD on January 14, 2009 "that pursuant

---

[3] *Montana 2016*, Talk Poverty, https://talkpoverty.org/state-year-report/montana-2016-report/ (last visited Aug. 31, 2017).

to MCA 61-5-214, [his] driver's license and/or driving privilege [was] suspended indefinitely . . . based upon notification that [he] failed to appear or pay fines, cost, and/or restitution as required by law from a court in Bozeman."  Exhibit 5, Suspension Notice 2009.

35.    The MVD further informed Mr. DiFrancesco that he would need to satisfy all his court debts and "pay a $100 non-refundable reinstatement fee directly to the department as required by MCA 61-5-218(1)" before his license could be reinstated. *Id.*

36.    Thus, Mr. DiFrancesco was not able to obtain a learner's permit or provisional driver's license while he was under the age of 18, nor was he able to take a driving test and obtain a full Montana driver's license once he turned 18, as he still had outstanding court debt from his MIP. Exhibit 1, DiFrancesco Decl.

37.    Mr. DiFrancesco has since paid the fine and completed the community service for his MIP. Exhibit 1, DiFrancesco Decl.; *see also* Exhibit 4, Bozeman Mun. Ct. Summary.  But he has not been able to pay off the many large fines he has been ordered to pay for driving without a valid license.  Exhibit 1, DiFrancesco Decl.; *see also* Exhibit 4, Bozeman Mun. Ct. Summary; Exhibit 6, Certified Driver Record.

38.    Mr. DiFrancesco is a construction worker and is unable to work consistently without being able to drive. Exhibit 1, DiFrancesco Decl.

39.    Lacking a valid license has caused Mr. DiFrancesco to become unemployed.

40.    Lacking a valid license has caused Mr. DiFrancesco to become homeless.

41.    Because he must work to earn money, he has been convicted of driving without a license five times in the past three years. *Id.*; *see also* Exhibit 6, Certified Driver Record.

42.    Each conviction of driving without a valid license resulted in six points being added to Mr. DiFrancesco's driving record, and he thus accrued 30 points within a three-year period.  Exhibit 7, Habitual Traffic Offender Decl.

43.    On October 5, 2016, the MVD declared Mr. DiFrancesco a "Habitual Traffic Offender" due to the 30 points he had accrued for his many convictions for driving without a license and imposed a revocation of his driver's license for a period of three years, effective from the date of the letter. *Id.*

44.    Mr. DiFrancesco has never been charged with a moving traffic violation or any violation related to road safety.  Exhibit 1, DiFrancesco Decl.; *see also* Exhibit 6, Certified Driver Record.

45.    Mr. DiFrancesco's inability to drive legally stems solely from his poverty; if he had had the money to pay his court-ordered debt in 2008 — or at any point thereafter until January of 2016 — he would have been able to restore his

11

driving rights, and he would have avoided the convictions that led to the MVD declaring him a "habitual traffic offender." Exhibit 1, DiFrancesco Decl.; *see also* Exhibit 6, Certified Driver Record.

46.     Mr. DiFrancesco still owes nearly $4,000 in unpaid fines for his "driving without a license" convictions. Exhibit 1, DiFrancesco Decl.

47.     Mr. DiFrancesco has also spent a total of about five months in jail for driving without a license. *Id.*

48.     Because he has no driver's license, he has not had a job in about a year. *Id.*

49.     As of this filing, he is not working and has no regular income. *Id.*

50.     Because he is unable to work and has no regular income, Mr. DiFrancesco does not have stable housing. *Id.*

## C.   Montana's Wealth-Based Driver's License Suspension Scheme Traps Poor Residents in a Cycle of Poverty

### i.    Defendants Suspend the Licenses of All People Who Fail to Pay Their Court Debts, Even Those Who Are Too Poor to Pay

51.     When a person does not pay a fine, court cost, or restitution, the MVD imposes a mandatory, indefinite suspension on the person's license. Mont. Code Ann. § 61-5-214(1)(b).[4]

---

[4] *See also Driver License Suspension,* Motor Vehicle Division, Montana Department of Justice, https://dojmt.gov/driving/driver-license-sanctions (stating same).

52.     Although a "person must be given written notice that the failure to appear on a criminal charge or comply with a criminal sentence may result in the suspension of the person's driver's license or driving privilege . . . followed by a written warning from the court . . . advising the person that a license suspension is imminent," Mont. Code Ann. § 61-5-214(3), there is no mention of any exception for those who can demonstrate that they are too poor to pay.

53.     The court is not statutorily required to make any inquiry into the reason for nonpayment or a person's financial status before informing the MVD that the person has failed to pay court debts. In fact, courts do not make any such inquiry.

54.     The MVD does not make any inquiry into the reason for nonpayment or a person's financial status before immediately suspending the license of the person.

55.     No MVD official ascertains the reason for nonpayment or a person's financial status after suspending the license of the person.

56.     A person may file a petition within 30 days after suspension for a hearing in the district court in the county where the person resides. Mont. Code Ann. § 61-5-211. But the suspension notice contains no mention of this right to a hearing, *see* Exhibit 5, Suspension Notice 2009, so there is no guarantee that an individual whose license has been suspended will even be aware of this right.

13

Moreover, the court in such a hearing is tasked with "tak[ing] testimony and examin[ing] the facts of the case and determin[ing] whether the petitioner is entitled to a driver's license," with no mention of hearing evidence on ability to pay or making a determination of indigence. Mont. Code Ann. § 61-5-211.

57.     People whose licenses are suspended because of failure to appear or comply with a sentence, including payment of fines, costs, or restitution, are not eligible to receive provisional, restricted, or probationary licenses. Mont. Code Ann. § 61-5-215.

## ii.     Defendants Will Not Reinstate a License Suspended for Nonpayment of Court Debts Until the Person Has Paid a $100 Fee in Addition to All Court Debts Owed

58.     Suspensions for failure to pay court debts are indefinite; they continue until the court notifies the MVD that the person has complied with the sentence, "including payment of any assessed fines, costs, or restitution." Mont. Code Ann. §§ 61-5-214(2)(a) and 61-5-216.

59.     A driver whose license has been suspended must pay a reinstatement fee of $100 to the Department before it can be restored. Mont. Code Ann. § 61-5-218(1).

60.     The MVD waives the reinstatement fee if a court has determined the person qualifies for a public defender. Mont. Code Ann. §§ 47-1-111; 61-5-

14

218(2)(c). But most fines are imposed for civil infractions, such as traffic tickets, which do not trigger appointment of counsel.

### iii.    A Person Who Drives While His or Her License Is Suspended Faces Imprisonment, Fines, and an Additional Period of Suspension

61.    A person convicted of driving without a valid license faces mandatory imprisonment from two days up to six months and may be fined up to $500. Mont. Code Ann. § 61-5-212(1)(b)(i).

62.    A conviction of driving while one's license is suspended also carries a mandatory one-year extension of the period of suspension. Mont. Code Ann. § 61-5-212(2)(a).

63.    Courts do not have the authority to suspend or defer the imposition of penalties for driving with a suspended license. Mont. Code Ann. § 61-5-212(6).

64.    Driving while one's license is suspended is an absolute liability offense in Montana, and people are frequently convicted of the offense even when they never received notification that their license had been suspended. Exhibit 2, Rutzke Aff.

65.    A conviction for driving while one's license is suspended results in six points being added to one's driving record, which may result in required

15

counseling or retaking the driving examination or both.[5]  Failure to comply with, and pay for, these additional requirements will result in an additional three-month license suspension.

### iv.    A Person Who Accumulates Thirty Points on His or Her Driving Record Within a Three-Year Period Is Declared a "Habitual Traffic Offender" and Faces a Three-Year License Revocation

66.    Under Montana law, a "habitual traffic offender" is "any person who within a 3-year period accumulates 30 or more conviction points."  Mont. Code Ann. § 61-11-20(b).

67.    "After it declares a person to be a habitual offender, the department shall revoke the person's driver's license or driving privilege for a period of 3 years from the date of the declaration." Mont. Code Ann. § 61-11-211.

### v.    License Suspensions Drive People Further into Poverty and Invite Further Infractions

68.    Montana's wealth-based suspension scheme imposes significant hardship on debtors and their families, often forcing them to choose between paying for food, shelter, health care, and clothing, or paying their court costs and fines.

---

[5] *The Driver's License Point System in Montana*, Driving Laws Published by Nolo, http://www.drivinglaws.org/resources/the-drivers-license-point-system-montana.htm (last visited Aug. 31, 2017).

69.    Because they cannot pay fines, poor drivers are over-represented in the pool of suspended drivers when compared to the general population of licensed drivers.

70.    People whose licenses are suspended because of failure to appear or failure to comply with a sentence, including payment of fines, costs, or restitution, are not eligible to receive provisional, restricted, or probationary licenses.  Mont. Code Ann. § 61-5-215.

71.    Not having a valid driver's license bars people from employment opportunities.  "Not all jobs require a driver's license, particularly those that pay very low wages. But having one is a very common requirement for the sorts of job that can actually lift people out of poverty."  Alana Semuels, *No Driver's License, No Job*, The Atlantic (June 15, 2016).[6]

72.    Indeed, a rigorous study of New Jersey drivers found that 42% of drivers lost their jobs after their driver's licenses were suspended.   Jon A. Carnegie, Ian M. Voorhees Transportation Center, Rutgers, The State University of New Jersey, Driver's License Suspensions, Impacts and Fairness Study 56 (2007).[7]

73.    Of those drivers, 45% were unable to find new employment. *Id.*

74.    Of those that were able to find another job, 88% reported a decrease in income. *Id.*

---

[6] https://www.theatlantic.com/business/archive/2016/06/no-drivers-license-no-job/486653/
[7] http://www.nj.gov/transportation/refdata/research/reports/FHWA-NJ-2007-020-V1.pdf

75.    In many cases, Montana's wealth-based suspension scheme forces suspended drivers to choose between driving illegally and losing their jobs. *See* Exhibit 2, Rutzke Aff.

76.    In Montana, driving on a suspended license is a criminal offense, with a violation carrying a mandatory prison sentence of up to six months and a fine of up to $500. Mont. Code. Ann. § 61-5-212(1)(b)(i).

77.    Thus, Montana's wealth-based suspension scheme creates a downward spiral from poverty to criminal culpability: an unpaid civil infraction ticket triggers automatic suspension, which often leads to the offense of driving without a valid license.

78.    The high cost of losing a driver's license inevitably results in an impossible choice: drive — and risk being charged with driving while suspended, which itself can lead to additional costs, fines, and periods of incarceration — or refrain from driving and lose access to gainful employment and medical care.

### vi.    Montana's Vast Rural Landscape Exacerbates the Hardships of Living Without a License

79.    At 145,545 square miles, Montana is the fourth-largest state in the United States.[8]   With only 6.5 people per square mile, it is one of the most sparsely-populated states — ranking 48th in population density.[9]

---

[8] *Quick Facts: Montana*, United States Census Bureau,
https://www.census.gov/quickfacts/table/PST045216/30 (last visited Aug. 31, 2017).

80.     Without the ability to drive, most jobs are inaccessible to people living in Montana. Even in cities where some public transportation options are available, getting to and from work without the ability to drive is extremely challenging and time-consuming, if it is possible at all. *See* Exhibit 2, Rutzke Aff.

81.     In fact, the Census Bureau estimates that nearly three-quarters of Montana commuters drive themselves to work while only 5.6 percent walk, and a scant 0.8 percent use public transit.[10]

## D.     Montana's Wealth-Based Suspension Scheme Violates Plaintiff's Equal Protection and Due Process Rights

82.     Defendants' indefinite suspension of Mr. DiFrancesco's driver's license because of his inability to pay court debts violates his constitutional rights under the Equal Protection and Due Process Clauses.

### i.     Defendants' Wealth-Based Suspension Scheme Violates Due Process Because It Lacks Fundamental Fairness

83.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

---

[9] *How Dense Could We Be?* Census and Economic Information Center, http://ceic.mt.gov/Documents/Maps/Population/PopDensityComparison00.pdf.

[10] "Commuter Transportation," *Montana*, DataUSA, https://datausa.io/profile/geo/montana (last visited Aug. 31, 2017).

84.     The Due Process Clause prohibits the state from subjecting individuals to processes and penalties that fail to comport with principles of due process and fundamental fairness.

85.     Suspending Mr. DiFrancesco's license for failing to pay court debts that he cannot afford is fundamentally unfair. *See, e.g., Bearden v. Georgia*, 461 U.S. 660, 660 (1983) (holding that it is fundamentally unfair to revoke probation because a probationer is unable to pay fines and restitution); *see also Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (holding that it is fundamentally unfair to deny access to an appeal solely because of inability to pay court costs); *Tate v. Short*, 401 U.S. 395, 395 (1971) (holding that it is fundamentally unfair to jail a person for inability to pay a fine); *Williams v. Illinois*, 399 U.S. 235, 240–41 (1970) (holding that it is fundamentally unfair to imprison a person beyond the maximum period fixed by statute solely because he cannot pay fines or court costs).

86.     Montana suspends driver's licenses without first determining whether the nonpayment was willful or whether the person was simply too poor to pay.

87.     The MVD enforces Montana's wealth-based suspension scheme without considering the debtor's ability to pay or offering any alternatives.

88.     Thus, Montana's wealth-based suspension scheme inevitably results in individuals being punished for their inability to pay.

89.    By converting a relatively modest penalty (*e.g.*, a $185 civil infraction fine) into a serious deprivation (an indefinitely suspended driver's license), Montana unfairly penalizes people who are poor simply for being poor.

90.    Punishing a person solely for his or her inability to pay violates principles of due process and fundamental fairness.

91.    Accordingly, Defendants' wealth-based suspension scheme violates the Due Process Clause.

  **ii.** **Defendants' Wealth-Based Suspension Scheme Violates Due Process Because It Infringes on Plaintiff's Fundamental Right to Travel**

92.    Mr. DiFrancesco has a fundamental due process right to intrastate travel. *See, e.g., Johnson v. City of Cincinnati*, 310 F.3d 484, 495 (6th Cir. 2002); *see also In re Marriage of Guffin*, 209 P.3d 225, 228 (Mont. 2009) (holding "that the right to travel guaranteed by the United States Constitution includes the right to travel within Montana").

93.    Plaintiff lives in a large, sparsely-populated, rural state where public transportation is extremely limited.

94.    Plaintiff cannot afford to pay for taxis or other car services for daily commuting and living.

95.    Due to Montana's weather conditions, non-motorized modes of transport, such as walking or biking, are not feasible alternatives during the winter.

96.    Thus, Plaintiff's only reliable form of transportation is to drive a personal vehicle.

97.    Defendants have suspended Plaintiff's license simply because he is unable to pay his debts and therefore have impeded his fundamental right to intrastate travel.

98.    Because it implicates a fundamental liberty interest, Defendants' suspension scheme must be narrowly tailored to achieve compelling state objectives.

99.    Defendants' suspension scheme is not limited in scope; it is a broad prohibition on all driving in all locations at all times in all circumstances for an indefinite period.

100.    While the collection of court-ordered debt is a significant state interest, suspending the driver's licenses of those who cannot pay is not narrowly tailored to collection. Indeed, it is counterproductive because it hampers Plaintiff's ability to make a living and pay his essential expenses, thus decreasing his ability to pay court debts.

101.    Accordingly, Defendants' wealth-based suspension scheme violates the Due Process Clause.

### iii.    Defendants' Wealth-Based Suspension Scheme Violates Equal Protection Because It Discriminates Against Poor People Without a Rational Connection to a Legitimate State Purpose

102.  The Due Process Clause protects against arbitrary and capricious government action even when the decision to take action follows adequate procedures.

103.  A person has protected property and liberty interests in a driver's license and its attendant government-sanctioned ability to drive.  *See Bell v. Burson*, 402 U.S. 535 (1971); *see also Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 986 (9th Cir. 1991); *State ex rel. Majerus v. Carter*, 693 P.2d 501, 503–504 (Mont. 1984).

104.  Montana's wealth-based suspension scheme is not rationally related to any legitimate government objective because suspending driver's licenses impedes lower-income workers from obtaining or maintaining employment in order to meet their financial obligations to the court.

105.  Driver's licenses are often essential in the pursuit of a livelihood, and their suspension threatens important interests of the people who hold them.

106.  The purpose of licensing drivers is to promote safety by keeping dangerous drivers off Montana's roads.

107.  Suspending licenses is counterproductive to Montana's interests in collecting debt from indigent residents because it prevents such residents from working.

108. For poor debtors, avoiding driver's license suspension does not operate as an incentive to pay when they must choose between paying the court and paying rent, buying medication, feeding their families, and other necessary expenses.

109. Indeed, for people who cannot pay court debt, coercing payment by license suspension is irrational and counterproductive; suspension makes it less likely — rather than more likely — that people will be able to pay court debt.

110. The loss of a license often means the loss of reliable transportation to and from work, which makes debtors less able to meet their financial obligations to the court.

111. Suspending driver's licenses — especially for people who are poor — causes unemployment and homelessness and thus exacerbates a cycle of poverty.

112. By increasing unemployment, homelessness, and the cycle of poverty, Montana's scheme is directly contrary to its own interest because it undermines people's ability to repay court debt. By decreasing the state's chances of recouping court debt, Montana's scheme is counterproductive and therefore irrational.

113. Montana's wealth-based suspension scheme violates the Due Process Clause of the United States Constitution because it causes substantial hardship to

poor drivers and bears no rational relationship to any legitimate government objective.

### iv.   Defendants' Wealth-Based Suspension Scheme Violates Equal Protection Because It Constitutes Extraordinary Collection

114.   When governments seek to recoup the costs of prosecution from indigent defendants, they may not use unduly harsh methods of debt collection solely because the debt is owed to the government and not to a private creditor. *See James v. Strange*, 407 U.S. 128 (1972); *see also State v. Ellis*, 167 P.3d 896, 899–900 (Mont. 2007) (suggesting that a recoupment scheme may implicate equal protection if there is no consideration of whether the debtor is able to pay and if the debtor has no opportunity to petition the court for remission of payment of debts "on grounds that it will impose manifest hardship").

115.   Fines penalize unlawful behavior; similarly, restitution compensates a victim.  By contrast, court costs subsidize court operations and thus are ordinary private consumer debts incurred for services rendered.

116.   When a private creditor seeks to enforce a judgment against a debtor via garnishment or lien, the law provides procedural and substantive protections for poor debtors against deprivation of certain basic necessities and the ability to maintain a livelihood.

117.   The private creditor may coerce payment only to the extent permitted by those protections.

118.  Montana's wealth-based suspension scheme does not treat indigent defendants, to the extent that they owe court costs, like other judgment debtors.

119.  Montana's wealth-based suspension scheme provides for suspension of the debtor's driver's license and the possibility of imprisonment.

120.  When the State of Montana, through Defendants' actions, takes advantage of the machinery of government to strip debtors of their driver's licenses, it coerces payment in a way that is unavailable to private creditors for debts unrelated to driving. Thus, it denies debtors who owe court costs the procedural and substantive statutory protections that other Montana debtors may invoke against a private creditor in ordinary debt collection proceedings.

121.  Montana's wealth-based suspension scheme fails to offer poor debtors the substantive and procedural protections that prevent private creditors from denying debtors the ability to maintain their livelihoods and meet their basic needs.

122.  The State of Montana's severe and coercive collection policies and practices discriminate against poor debtors and violate the fundamental principle of equal protection of the laws embedded in the United States Constitution.

**v.     Defendants' Wealth-Based Suspension Scheme Violates Procedural Due Process Because It Does Not Guarantee an Ability-to-Pay Hearing**

123.  A person's driver's license is recognized as a property interest that may not be taken away without due process of law. *Bell v. Burson*, 402 U.S. 535

26

(1971); *see also Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 986 (9th Cir. 1991); *State ex rel. Majerus v. Carter*, 693 P.2d 501, 503–504 (Mont. 1984).

124.   Due process requires the State of Montana to conduct ability-to-pay inquiries at each stage in a case, including the point at which it proposes to take coercive action to punish nonpayment.

125.   The state's wealth-based suspension scheme imposes mandatory costs without consideration of ability to pay.   Instead, Defendants suspend a person's driver's license upon receiving a notice a court that that person has failed to pay court debts. Mont. Code Ann. § 61-5-214(1)(b).

126.   Prior to suspending a debtor's driver's license, the MVD does not inform the debtor of any right to an ability-to-pay hearing.

127.   Moreover, Defendants do not independently review the debtor's ability to pay before or after enforcing the harsh punishment of suspension.

128.   The purpose of the state's wealth-based suspension scheme is to coerce payment, not to protect public safety on the roads.   Therefore, Mr. DiFrancesco and others similarly situated are entitled to pre-deprivation notice and a hearing prior to license suspension.

129.   There is currently no hearing required under Montana law for those facing driver's license suspension for unpaid court debt, creating a high risk that

indigent debtors will be deprived of their driver's licenses for reasons directly attributable to their poverty.

130.  The high risk of deprivation created by Defendants' automatic, one-size-fits-all driver's license suspension system violates the Due Process Clause of the United States Constitution.

## Class Action Allegations

131.  The named Plaintiff brings this action, on behalf of himself and all others similarly situated, to assert the claims alleged in this Complaint on a common basis.

132.  A class action is a superior means, and the only practicable means, by which the named Plaintiff and unknown Class Members can challenge Defendants' unlawful wealth-based suspension scheme.

133.  This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

134.  This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

135.  Plaintiff proposes one Class seeking declaratory and injunctive relief. The Declaratory and Injunctive Class is defined as: All Montana residents who did not receive an ability to pay hearing before the suspension of their driver's licenses

and whose driver's licenses are currently suspended, or will be suspended, solely for unpaid court debts. The proposed Class should include only those whose actions did not warrant automatic suspension upon the commission of the underlying offense, but instead resulted only from the non-payment of court debts.

**A.    Numerosity — Fed. R. Civ. P. 23(a)(1)**

136.   On information and belief, over 10,000 Montana residents have their licenses suspended each year for inability to pay court debts.

**B.    Commonality — Fed. R. Civ. P. 23(a)(2)**

137.   The relief sought is common to all Class Members, and common questions of law and fact exist as to all Class Members. The named Plaintiff seeks relief concerning whether the automatic suspension scheme violates the rights of the Class Members and relief mandating that Defendants end the scheme so that the constitutional rights of the Class Members will be protected in the future.

138.   These common legal and factual questions arise from one scheme: Defendants' automatic suspensions based on inability to pay court debts. The material requirements of the suspension statutes do not vary from Class Member to Class Member, and the resolution of these legal and factual issues will determine whether all Class Members are entitled to the relief they seek.

139.   Among the most important, but not the only, common questions of fact are:

- Whether Montana has a policy and practice of punishing poor people more harshly than wealthy people for failing to pay court debt;
- Whether Montana, acting by and through Defendants, has a policy and practice of suspending driver's licenses without conducting meaningful inquiries into a person's ability to pay before taking such action; and
- Whether Montana, acting by and through Defendants, exploits its governmental status to avail itself of forms of enforcement in the collection of court debts not available to most private civil creditors.

140.  Among the most important, but not the only, common questions of

law are:

- Whether fundamental principles of due process and equal protection require Montana to take into account a person's ability to pay court costs and fines;
- Whether suspending a person's driver's license solely because she or he cannot afford to make a monetary payment toward court costs and fines previously imposed is lawful;
- Whether a person is entitled to a meaningful inquiry into his or her present ability to pay court costs and fines previously imposed, before Defendants suspend his or her license for nonpayment; and
- Whether depriving persons encumbered with court debt of the protections afforded other Montana debtors when taking the harsh action of suspending their driver's licenses for nonpayment violates the Equal Protection Clause.

## C.   Typicality — Fed. R. Civ. P. 23(a)(3)

141.  The named Plaintiff's claims are typical of the other Class Members'

claims, and he has the same interests in this case as all other Class Members. Each

Class Member has had or will have his or her driver's license suspended due to an

inability to pay court debts.  The answer to whether Defendants' wealth-based

suspension scheme is unconstitutional will determine the claims of the named Plaintiff and every other Class Member.

142.    If the named Plaintiff succeeds in the claim that the MVD's policies and practices concerning wealth-based suspension violate his constitutional rights, that ruling will likewise benefit every other Class Member.

**D.    Adequacy — Fed. R. Civ. P. 23(a)(4)**

143.    The named Plaintiff is an adequate representative of the Class because his interests in the vindication of the legal claims that he raises are entirely aligned with the interests of the other Class Members, who each have the same basic constitutional claims. He is a member of the Class, and his interests coincide with, and are not antagonistic to, those of the other Class Members.

144.    There are no known conflicts of interest among Class Members, all of whom have a similar interest in vindicating their constitutional rights in the face of Defendants' wealth-based suspension scheme.

145.    Plaintiff is represented by attorneys from Equal Justice Under Law and Morrison, Sherwood, Wilson & Deola, PLLP, who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' scheme and the relevant constitutional and statutory law.

31

146.  The combined efforts of Class counsel have so far included extensive investigation into Defendants' suspension scheme, including interviewing attorneys in the region, statewide experts in the functioning of state and local courts, and national experts in constitutional law, law enforcement, judicial procedures, and criminal law.

147.  Class counsel have a detailed understanding of local law and practices as they relate to federal constitutional requirements.

148.  As a result, counsel have devoted enormous time and resources to becoming intimately familiar with Defendants' scheme and with the relevant state and federal laws. The interests of the Class Members will be fairly and adequately protected by the named Plaintiff and his attorneys.

**E.    Rule 23(b)(2)**

149.  Class action status is appropriate because Defendants have acted or will act in the same unconstitutional manner with respect to all Class Members. Defendants enforce a wealth-based suspension scheme: wealthy Montana residents who are ordered to pay costs, fees, fines, and restitution by the courts are able to retain their driver's licenses, while the poorest residents are further forced into a cycle of poverty.

150.  The Class therefore seeks declaratory and injunctive relief to enjoin Defendants from enforcing the automatic suspensions and reinstatement fees.

Because the putative Class challenges Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every Class Member, Rule 23(b)(2) certification is appropriate and necessary.

151. Injunctive relief compelling Defendants to comply with these constitutional rights will similarly protect each Class Member from being subjected to Defendants' unlawful policies and practices. A declaration and injunction stating that Defendants cannot suspend driver's licenses as a punishment for being poor would provide relief to every Class Member. Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

## Claims for Relief

## Count One: Defendants' Wealth-Based Suspension Scheme Violates Due Process Because It Lacks Fundamental Fairness

152. Plaintiff incorporates by reference each and all of the previous allegations in this Complaint.

153. The Fourteenth Amendment's Due Process Clause requires that Montana maintain a standard of fundamental fairness in its justice system. Defendants' automatic suspensions for failure to pay court debts punishes people simply for being too poor to pay, which violates the principle of due process because it is fundamentally unfair.

## Count Two: Defendants' Wealth-Based Suspension Scheme Violates Due Process Because It Infringes on Plaintiff's Fundamental Right to Intrastate Travel

33

154. Plaintiff incorporates by reference each and all of the previous allegations in this Complaint.

155. Mr. DiFrancesco and others similarly situated have a fundamental right to intrastate travel. Because they have no viable alternative to driving, Defendants' suspension of their licenses implicates their right to intrastate travel, and this suspension is not narrowly tailored to meet the state objective of debt collection.

## Count Three: Defendants' Wealth-Based Suspension Scheme Violates Equal Protection Because It Discriminates Against Poor People Without a Rational Connection to a Legitimate State Purpose

156. Plaintiff incorporates by reference each and all of the previous allegations in this Complaint.

157. Mr. DiFrancesco and others similarly situated have protected property and liberty interests in having driver's licenses and the ability to drive legally. Defendants' counterproductive collection method of suspending people's licenses when they are unable to pay court debts is not rationally related to a legitimate state interest and is therefore unconstitutional.

## Count Four: Defendants' Wealth-Based Suspension Scheme Violates Equal Protection Because It Constitutes Extraordinary Collection

158. Plaintiff incorporates by reference each and all of the previous allegations in this Complaint.

159. Mr. DiFrancesco's equal protection rights are implicated when the State of Montana uses its unique position as a government to use debt collection methods that are not available to private creditors. By stripping Mr. DiFrancesco and others similarly situated of their driver's licenses as a means of collection, Defendants are violating their constitutional rights under equal protection.

## Count Five: Defendants' Wealth-Based Suspension Scheme Violates Procedural Due Process Because It Does Not Guarantee an Ability-to-Pay Hearing

160. Plaintiff incorporates by reference each and all of the previous allegations in this Complaint.

161. Mr. DiFrancesco and others similarly situated have protected property and liberty interests in their driver's licenses and their ability to drive legally. Defendants violate procedural due process rights by suspending licenses without establishing an ability to pay.

## Requested Relief

WHEREFORE, Plaintiff requests that the Court issue the following relief:

a. A declaratory judgment that Defendants' policies, practices, acts, and/or omissions as described herein are unlawful and violate Plaintiff's and Class Members' rights under the Constitution and laws of the United States;

b. An order and judgment preliminarily and permanently enjoining Defendants, their subordinates, agents, employees, representatives, and all others acting or purporting to act in concert with them or on their behalf from issuing or processing orders of driver's license suspensions for unpaid court debt against Plaintiff and Class Members

35

until such time as the State of Montana implements a system that complies with the United States Constitution;

c. An order and judgment preliminarily and permanently ordering Defendants to reinstate the Plaintiff's and Class Members' driver's licenses (insofar as they are suspended based on unpaid court debt and/or on driving on licenses suspended due to unpaid court debt) and enjoining Defendants from requiring Plaintiff and Class Members to pay the reinstatement fees as a condition of such reinstatement;

d. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems proper.

Respectfully submitted,

*/s/ Phil Telfeyan*
Phil Telfeyan (*pro hac vice pending*)
Catherine Sevcenko (*pro hac vice pending*)
Rebecca Ramaswamy (*pro hac vice pending*)
Attorneys, Equal Justice Under Law
400 7th Street NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
catherine@equaljusticeunderlaw.org
rramaswamy@equaljusticeunderlaw.org

*/s/ Robert Farris-Olsen*
Robert Farris-Olsen (MT Bar No. 11937)
Scott Peterson (MT Bar No. 11996)
Attorneys, Morrison, Sherwood, Wilson & Deola, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
(406) 442-3261
rfolsen@mswdlaw.com
speterson@mswdlaw.com

*Attorneys for Plaintiff*